IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DAVID GARRISON, | : | |
|     Petitioner, | | Case No. 3:25-cv-222 |
| v. | : | JUDGE WALTER H. RICE |
| DEBRA GARRISON, et al., | | |
|     Respondents. | : | |

---

ENTRY OVERRULING EMERGENCY MOTION FOR LEAVE TO FILE TO AMEND HABEAS PETITION AND EXPEDITE (DOC. #8) AND EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO PREVENT ONGOING CONSTITUTIONAL VIOLATIONS UNDER COLOR OF LAW (Doc. #9)

---

This Court previously dismissed a Petition for Writ of Habeas Corpus filed by Petitioner David Garrison ("Petitioner") on the grounds that the Court lacked subject matter jurisdiction to consider the petition. Doc. #6. Petitioner has now filed an emergency motion seeking leave to amend his now-dismissed petition, Doc. #8, and a second emergency motion seeking a temporary restraining order and preliminary injunction to prevent what he alleges are ongoing constitutional violations. Doc. #9.

Petitioner was granted full custody of the children on May 25, 2022. Doc. #1, PageID #2. On July 28, 2023, the children's paternal grandmother filed two

complaints in the Miami County Court of Common Pleas. The first sought legal custody of the children and the second sought Grandparent Companionship and/or Visitation Rights. Doc. #1, PageID #50–56. The children's mother filed a Motion for Emergency Custody on November 17, 2023. Doc. #1, PageID #61.

On February 2, 2024, Miami County Child Protective Services ("CPS") received a report alleging concerns of neglect. *Id.* at PageID #86. That same day, a CPS caseworker and a CPS supervisor conducted an unannounced visit at the Petitioner's house where he lived with his children, during which the CPS workers were turned away and not permitted to evaluate the living conditions. *Id.* An emergency *ex parte* order was obtained from the Miami County Court of Common Pleas and the children were removed from the house. *Id.* at PageID #87. CPS moved to withdraw the complaint alleging neglect on February 13, 2024. *Id.* at PageID #89.

On February 23, 2024, Magistrate Judge Jaqua conducted a hearing on the two complaints filed by the paternal grandmother and the emergency motion filed by the mother. Doc. #1, PageID #119.[1] At the conclusion of the hearing, the Magistrate Judge awarded interim custody of the children to the paternal grandmother. *Id.* This interim custody was finalized in an order filed March 15,

---

[1] According to Magistrate Judge Jaqua's Interim Order, the February 23, 2024, hearing was attended by the mother of the children, the paternal grandmother and her attorney, as well as Petitioner. Doc. #1, PageID #119.

2

2024.[2] Doc. #1, PageID #120–22. Petitioner filed a motion to vacate the final custody order on August 21, 2024. Doc. #1, PageID #124–39. Petitioner claims this motion was never ruled upon. Doc. #1, PageID #123. After Petitioner filed an appeal, the Court of Appeals of Ohio, Second Appellate District, upheld the custody determination. Doc. #1, PageID #141–48.

This Court dismissed Petitioner's prior petition because subject matter jurisdiction for courts to consider habeas relief is largely unavailable to individuals who are not in custody. Doc. #6. In the amended petition, Petitioner specifically states that "[t]his case does not seek appellate review of a state court judgment under the *Rooker-Feldman* doctrine, nor does it invoke statutory causes of action under 42 U.S.C. § 1983 or 28 U.S.C. § 1361." Doc. #8, PageID #196. For good reason. The *Rooker-Feldman* doctrine is based on two cases decided by the Supreme Court of the United States: *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). At its core, the doctrine recognizes that only the Supreme Court has been granted jurisdiction by Congress to review state court decisions. It is well understood, under the *Rooker-Feldman* doctrine, federal district courts do not have the ability to review the merits of state

---

[2] Petitioner's argument that emergency relief is required in this case stands in opposition to the nearly sixteen months that have elapsed since the final order of custody was filed.

court judgments, including those judgments dealing with child custody. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

Instead, Petitioner's describes his cause of action as seeking this Court's review of the state court adjudication on the basis that the process infringed on his due process rights as guaranteed by the Fourteenth Amendment. Doc. #9, PageID #283. However, no matter how Petitioner frames his petition, he is asking this Court to review the state court's adjudication. This is the very course of action that the *Rooker-Feldman* doctrine precludes. The Sixth Circuit provided a helpful example of this doctrine in action in *McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006):

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

Understanding that, *Rooker-Feldman* presents an obstacle to Petitioner's course of action, as he attempts to bring this case within the narrow passageway where Congress has given district courts jurisdiction to review state court judgments: habeas corpus. Yet, as described in the Court's prior Entry, a petition for writ of habeas corpus, with very few exceptions (none of which are applicable herein), requires a person to be incarcerated in a custodial facility. Doc. #6.

4

In fact, The Supreme Court of the United States has recognized only three scenarios in which individuals who were not incarcerated were able to bring a petition for writ of habeas corpus: (1) *Jones v. Cunningham*, where a parolee was permitted to challenge the circumstances of his conviction and subsequent parole requirements; (2) *Carafas v. LaVallee*, where a incarcerated individual was permitted to continue pursuit of his habeas writ, despite his release from custody during the pendency of the case; and (3) *Hensley v. Municipal Court*, where an individual who was released on his own recognizance prior to commencement of his incarceration was able to challenge his conviction. *Jones v. Cunningham*, 371 U.S. 236 (1963); *Carafas v. LaVallee*, 391 U.S. 234 (1968); *Hensley v. Municipal Court*, 411 U.S. 345 (1973).

In fact, the Supreme Court has considered, and rejected, a case remarkably similar to the allegations that Petitioner brings here. In *Lehman v. Lycoming Cnty. Children's Services Agency*, Ms. Lehman attempted to bring a habeas petition to challenge the state court's decision to remove her children and place them in the care of a foster home. 458 U.S. 502, 504 (1982). In explaining why the petition could not be brought, the Court stated the following:

> Ms. Lehman argues that her sons are involuntarily in the custody of the State for purposes of § 2254 because they are in foster homes pursuant to an order issued by a state court. Her sons, of course, are not prisoners. Nor do they suffer any restrictions imposed by a state criminal justice system. These factors alone distinguish this case from all other cases in which this Court has sustained habeas challenges to state-court judgments. Moreover, although the children have been placed in foster homes pursuant to an order of a Pennsylvania court, they are not in the "custody" of the State in the sense in which that term has been used by this Court in determining the availability of the writ of habeas corpus. They are in the "custody" of their foster parents in essentially the same way, and to the same extent, other children are in the custody of their natural or adoptive parents. Their situation in this respect differs little from the situation of other children in the public generally; they suffer no unusual restraints not imposed on other children. They certainly suffer no restraint on liberty as that term is used in *Hensley* and *Jones*, and they suffer no "collateral consequences"—like those in *Carafas*—sufficient to outweigh the need for finality. The "custody" of foster or adoptive parents over a child is not the type of custody that traditionally has been challenged through federal habeas. Ms. Lehman simply seeks to relitigate, through federal habeas, not any liberty interest of her sons, but the interest in her own parental rights.

*Lehman*, 458 U.S. at 510–11 (footnotes omitted).

The only difference in this case is that Petitioner's children are not in foster homes. Instead, they are in the custody of their paternal grandmother. This is a difference without a meaningful distinction and the Court is bound to follow the opinion and reasoning of *Lehman*. Petitioner's attempt to amend the petition does nothing to solve the lack of subject matter jurisdiction upon which the Court dismissed his initial petition. While the Court is sympathetic to Petitioner's well-intentioned attempts to regain custody of his children, neither a habeas petition nor

6

an action under 42 U.S.C. § 1983 present a viable federal pathway to do so. *See Heck v. Humphrey*, 512 U.S. 477 (1994).

For the above-mentioned reasons, the Court OVERRULES Petitioner's Emergency Motion for Leave to File to Amend Habeas Petition and Expedite, Doc. #8, and OVERRULES Petitioner's Emergency Motion for Temporary Restraining Order and Preliminary Injunction to Prevent Ongoing Constitutional Violations Under Color of Law. Doc. #9.

The captioned case remains terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

Date: July 14, 2025            *Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE